# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| MOHAMMAD AMER, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br>v.<br><br>I. C. SYSTEM, INC.,<br><br>      Defendant. | Case No.: 20-cv-1176<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA"), and the Wisconsin Consumer Act, Chapters 421-427, Wisconsin Statutes (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendants directed their collection efforts into the District.

## PARTIES

3. Plaintiff Mohammad Amer is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendants sought to collect from them a debt incurred for personal, family, or household purposes.

5. Plaintiff is also a "customer" as defined in the Wisconsin Consumer Act, Wis. Stat. § 421.301(17), in that Plaintiff engaged in consumer transactions.

6. Defendant I. C. System, Inc. ("ICS") is a foreign business corporation with its principal place of business located at 444 Highway 96 East, PO Box 64444, St. Paul, Minnesota 55164.

7. ICS does substantial business in Wisconsin and maintains a registered agent for service of process at C T Corporation System, 301 S. Bedford St. Suite 1, Madison, Wisconsin 53703.

8. ICS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

9. ICS is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

10. ICS is licensed as a "Collection Agency" under Wis. Stat. § 218.04 and. Wis. Admin. Code Ch. DFI-Bkg 74.

11. ICS is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

**FACTS**

12. On or about January 31, 2020, ICS mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "ATT DIRECTV." A copy of this letter is attached to this complaint as Exhibit A.

13. Upon information and belief, the alleged debt referenced by Exhibit A was incurred as a result of a transaction for personal, family, or household purposes, including household telecommunications services.

14. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

2

15. Upon information and belief, Exhibit A is a form debt collection letter, used by Defendant to attempt to collect alleged debts.

16. Upon information and belief, Exhibit A is the first letter that ICS sent to Plaintiff regarding the alleged debt referenced in Exhibit A.

17. Exhibit A includes the following representation which largely reflects the debt validation notice that the FDCPA, 15 U.S.C. § 1692g(a), requires that debt collectors mail alleged debtors along with, or within five days of, the initial communication:

> NOTICE
> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, we will assume this debt is valid. If you notify us in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, we will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you make a request in writing within 30 days after receiving this notice we will provide you with the name and address of the original creditor, if different from the current creditor.

18. Immediately below the validation notice, Exhibit A includes the following text:

> If you feel you are or have been a victim of Theft of Identity, please call AT&T Wireline at 1-866-718-2011.

19. Exhibit A also states:

> The account information has been forwarded to the national credit reporting agencies.

20. Exhibit A is confusing and misleading to the unsophisticated consumer.

21. 15 U.S.C. § 1692g(a)(4) states:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
> …
>> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector;

3

22. If a consumer is, or believes he may be, a victim of identity theft, that consumer would also believe that he did not owe the debt arising from the alleged identity theft. That is a in the nature of a "dispute," in that the consumer does not believe he owes the debt and the debt collector and/or creditor believes the consumer does owe the debt.

23. To trigger verification, the debtor must provide the debt collector with written notification of a dispute. 15 U.S.C. § 1692g(a)(4).

24. Upon receiving a written dispute from a consumer within the 30-day debt validation period, the FDCPA requires the debt collector to obtain verification of the debt and mail it to the consumer before conducting any further collection efforts. 15 U.S.C. § 1692g(b).

25. The consumer's dispute does not effectively trigger the verification requirement unless it is communicated in writing, and sent to the debt collector during the initial thirty-day period following receipt of the validation notice. *See, Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 348 (7th Cir. 2018).

26. <u>Exhibit A</u> confusingly directs the debtor to notify the creditor – AT&T – about a subset of disputes – identity theft – without informing the consumer that the dispute must also be communicated *in writing to ICS* to trigger verification. *See, e.g., Livermore v. Unifund CCR LLC*, No. 17-cv-1051-JPS, 2017 U.S. Dist. LEXIS 206542, at *11-12 (E.D. Wis. Dec. 15, 2017) (observing that contradictory instructions to contact both the creditor and the collection agency could plausibly confuse the unsophisticated consumer.) (citing *Macarz v. Transworld Sys., Inc.*, 26 F. Supp. 2d 368, 371 (D. Conn. 1998); *Green v. Universal Fidelity, L.P.*, No. 13-cv-1119-LA, Dkt. No. 17 at 2 (E.D. Wis. June 19, 2014)); *Weissman v. Collecto, Inc.*, No. 17-cv-4402, 2019 U.S. Dist. LEXIS 8600, at *16-17 (E.D.N.Y. Jan. 17, 2019); *see also, Blair v. Collectech Systems*, No. 97-cv-8630, 1998 U.S. Dist. LEXIS 6173, at *7-8 (N.D. Ill. Apr. 17, 1998); *Rosenburg v.*

4

*Transworld Sys.*, 2000 U.S. Dist. LEXIS 5486 (N.D. Ill. Apr. 13, 2000); *Spira v. Consiglio, Parisi & Allen*, No. 99-cv-870, 2001 U.S. Dist. LEXIS 24497, at *9-12 (E.D.N.Y. Jan. 3, 2001).

27. The instruction to "call AT&T," which is offset and easily read, would confuse and mislead consumers who wish to dispute the debt for identity theft whether they also need to communicate their disputes to ACS to require ACS to cease collection and report the debt as disputed. *See,* 15 U.S.C. §§ 1692e(8) and 1692g(b).

28. Merely contacting AT&T does not necessarily require ICS to report the debt as disputed because information in creditors' files is not imputed to debt collectors. *See, Randolph v. IMBS, Inc.*, 368 F.3d 726, 729 (7th Cir. 2004) ("Courts do not impute to debt collectors other information that may be in creditors' files – for example, that debt has been paid or was bogus to start with.").

29. Moreover, Exhibit A states that Defendant is already reporting the debt "to the national credit reporting agencies." Although Defendant would presumably update its credit-reporting in the event the consumer communicates the identity theft dispute to Defendant, there is no way to know whether the credit-reporting would be updated if the dispute is reported to the creditor because this information cannot be imputed to Defendant. *See Randolph*, 368 F.3d at 729.

30. ICS' language contradicts, overshadows and confuses the 15 U.S.C. § 1692g notice.

31. Plaintiff was confused and misled by Exhibit A.

32. The unsophisticated consumer would be confused and misled by Exhibit A.

### *The FDCPA*

33. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives

5

misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("Spuhler I") ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes … do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and

6

to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lanev. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)).For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

34. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

35. Misrepresentations of the character, amount or legal status of any debt, including language confusing or obscuring purported settlement offers, injure or risk injury to interests expressly protected by Congress in the FDCPA. *See Degroot v. Client Servs.,* 2020 U.S. Dist. LEXIS 6677 (E.D. Wis. Jan. 15, 2020) ("[A]n informational injury can be concrete when the

7

plaintiff is entitled to receive and review substantive information."); *Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt., Inc.*, 18-cv-1484 (E.D. Wis. August 9, 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

36. 15 U.S.C. § 1692e generally prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

37. 15 U.S.C. § 1692e(2) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt, or the "false representation of…compensation which may be lawfully received by any debt collector for the collection" of an alleged debt.

38. 15 U.S.C. § 1692e(5) specifically prohibits threatening "to take any action that cannot legally be taken or that is not intended to be taken."

39. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

40. 15 U.S.C. § 1692g(a) states:

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following

8

information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

…

> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector;

41. 15 U.S.C. § 1692g(a) states, in relevant part: "Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

### *The WCA*

42. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

43. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

44. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

45. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors

9

of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

46. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

47. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

48. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

49. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

50. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer or a person related to the customer with such frequency of at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer."

51. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct … in such a manner as can reasonably be expected to threaten or harass the customer."

52. The Wisconsin Department of Financial Institutions, which is tasked with regulating licensed collection agencies, has found that "conduct which violates the Federal Fair Debt Collection Practices Act" can reasonably be expected to threaten or harass the customer. *See* Wis. Admin. Code DFI-Bkg § 74.16(9) ("Oppressive and deceptive practices prohibited.").

## COUNT I – FDCPA

53. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

54. By stating "If you feel you are or have been the victim of Theft of Identity, please call AT&T Wireline…" <u>Exhibit A</u> contradicts and overshadows the validation notice and includes representations which are false, deceptive, and misleading as to Plaintiff's rights to dispute his alleged debt.

55. Defendant violated 15 U.S.C. §§ 1692e, 1692e(10), and 1692g(b).

## COUNT II -- WCA

56. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

57. ICS is licensed as a "Collection Agency" under Wis. Stat. § 218.04 and. Wis. Admin. Code Ch. DFI-Bkg 74.

58. Defendant's conduct violates the FDCPA.

59. Defendant violated Wis. Stat. §§ 427.104(1)(g) and 427.104(1)(h).

## CLASS ALLEGATIONS

60. Plaintiffs bring this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by <u>Exhibit A</u> to the complaint in this action, (c) between July 30, 2019 and July 30, 2020, inclusive, (d) not returned by the postal service.

61. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

62. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendants complied with the FDCPA and WCA.

63. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

64. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

65. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

66. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

  i. actual damages;
  ii. statutory damages;

iii. attorneys' fees, litigation expenses and costs of suit; and

iv. such other or further relief as the Court deems proper.

Dated: July 30, 2020

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com